1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PHILLIP BLAIR JONES,                    No.  2:11-cv-1006 JAM GGH P

12              Petitioner,

13        v.

14   KNIPP, Warden                           ORDER; FINDINGS AND
                                             RECOMMENDATIONS
15              Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him

19   by way of a guilty plea on June 18, 2008 in the Butte County Superior Court on charges of

20   forcible oral copulation with two minors (Cal. Penal Code §288a(c)).  He seeks federal habeas

21   relief on the following grounds: (1) petitioner's confession was inadmissible because it was

22   coerced by the Oroville Police Department; (2) petitioner's plea on the Harvey waiver was invalid

23   because he could not understand the consequences of the plea; and (3) his trial counsel rendered

24   ineffective assistance in telling petitioner to plead guilty when he had a viable defense.  Upon

25   careful consideration of the record and the applicable law, the undersigned will recommend that

26   petitioner's application for habeas corpus relief be denied.

27   /////

28   /////

                                              1

1  I.  BACKGROUND

2        Petitioner was charged with five counts of forcible oral copulation against female family

3  members.  (Resp't's Lod. Doc. 8 at 2-6.)  On May 7, 2008, the matter was continued for a mental

4  competence hearing.  (Id. at 12.)  A psychiatrist was ordered to examine petitioner to determine

5  whether he was competent to stand trial.  (Id. at 14-15.)  On June 4, 2008, after the exam was

6  conducted, petitioner was found competent and criminal proceedings were reinstated.  (Id. at 21.)

7  On June 18, 2008, petitioner entered a plea of no contest to Count One as amended, with an

8  enhancement for multiple victims.  (Id. at 23-29.)  Counts two through five were dismissed

9  pursuant to a Harvey waiver.  (Id. at 23.)  Petitioner was sentenced to fifteen years to life on

10  September 3, 2008, with a restitution fine that was later reduced.  (Id. at 72; Lod. Doc. 1.)

11        On June 23, 2009, the California Court of Appeal, Third Appellate District, modified

12  petitioner's fine, but affirmed the judgment.  (Id.)  Petitioner did not seek review in the California

13  Supreme Court.

14        Petitioner's first state habeas petition was filed on April 3, 2010 with the Butte County

15  Superior Court.  It was denied in a somewhat reasoned opinion wherein reasons were checked off

16  on a pre-printed form, including that the allegations were insufficient to allow for intelligent

17  consideration of the issues with a reference to In re Swain (1949) 34 Cal.2d 300, 303-04, and that

18  petitioner failed to state with particularity the facts upon which relief should be granted and/or

19  failed to include copies of reasonably available documentary evidence to support the claim, with a

20  reference to People v. Duvall (1995) 9 Cal. 4th 464, 474.  (Res't's Lod. Doc. 3.)

21        Petitioner filed his second state petition with the California Court of Appeals on July 1,

22  2010, and it was denied on July 15, 2010, in one sentence with no citation.  (Res't's Lod. Doc. 5.)

23        Petitioner's final state petition was filed on August 21, 2010, with the California Supreme

24  Court which denied the petition with citations to People v. Duvall (1995) 9 Cal. 4th 464, 474 and

25  In re Swain (1949) 34 Cal.2d 300, 304, on March 16, 2011.  (Res't's Lod. Doc. 7.)

26        Petitioner filed his federal habeas petition on  April 14, 2011.  On November 7, 2011, the

27  district court adopted this court's findings and recommendations, granted respondent's motion to

28  dismiss the petition as untimely, and entered judgment.  (ECF No. 22, 23.)  Petitioner appealed,

1    and on February 11, 2013, the Ninth Circuit Court of Appeals summarily vacated and remanded

2    for further proceedings in light of <u>Cross v. Sisto</u>, 676 F.3d 1172, 1177-78 (9th Cir. 2012), which

3    was issued after the district court's judgment.  (ECF No. 29.)  Upon order of this court to file a

4    response to the petition in light of the Ninth Circuit's order, respondent filed an answer which

5    addresses the merits of petitioner's claims.

6    II.  <u>DISCUSSION</u>

7         A.  <u>Statute of Limitations</u>

8         The answer's sole mention of this affirmative defense is: "[I]t appears the Petition is

9    untimely filed. 28 U.S.C. § 2244(d)(1)(A).  (Docs. 14, 19.)"  The memorandum of points and

10   authorities in the answer makes no mention of this defense, but is limited to discussing the merits

11   of petitioner's claims.  This isolated statement is not sufficient to preserve a defense based on

12   untimeliness, especially in light of the Ninth Circuit Court of Appeals' remand order and this

13   court's follow-up order directing respondent to file a response in light of the Ninth Circuit's order

14   remanding for further proceedings in light of <u>Cross v. Sisto</u>, 676 F.3d 1172, 1177-78 (9th Cir.

15   2012).

16        The answer is the only pleading respondent can file in this habeas case, and is often the

17   only filing by respondent in a habeas case.  A claim such as that presumably expressed by

18   respondent above, made without argument, is essentially no claim at all.  Bare contentions,

19   unsupported by explanation or authority, are deemed waived.  <u>See</u> <u>FDIC v. Garner</u>, 126 F.3d

20   1138, 1145 (9th Cir. 1997) (claim waived when no case law or argument in support is presented);

21   <u>Seattle School Dist., No. 1 v. B.S.</u>, 82 F.3d 1493, 1502 (9th Cir. 1996) (party who presents no

22   explanation in support of claim of error waives issue); <u>see also</u> <u>Pelfresne v. Village of Williams</u>

23   <u>Bay</u>, 917 F.2d 1017, 1023 (7th Cir.1990); ("A litigant who fails to press a point by supporting it

24   with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . .

25   forfeits the point.  We will not do his research for him.");  <u>Johnson v. Indopco</u>, 887 F. Supp.

26   1092, 1096 (N.D. Ill. 1995) (finding argument unsupported by relevant authority, or by

27   demonstration of why it is a good argument despite lack of authority, constitutes mere assertion

28   not meriting court's attention).

3

1   Moreover, Fed. R. Civ. P 8(c) and 12(b) mandate that the statute of limitations be raised in

2   the first responsive pleading in order to avoid a waiver of this defense.  Morrison v. Mahoney,

3   399 F.3d 1042, 1046 (9th Cir. 2005), quoting Nardi v. Stewart, 354 F.3d 1134, 1140 (9th Cir.

4   2004), abrogated on other grounds by Day v. McDonough, 547 U.S. 198, 126 S.Ct. 1675 (2006).

5   Nevertheless, this defense is forfeited only where a state intentionally waives it.  Day, 547 U.S. at

6   202.  Respondent's sentence here is not an inadvertent error as was the case in Day.  Rather,

7   respondent has acknowledged the existence of this potential defense, but has chosen not to argue

8   for it.

9   Based on the lack of argument concerning untimeliness, respondent is found to have

10   abandoned any such affirmative defense.

11   B.  Waiver of Exhaustion

12   The Superior Court's opinion on petitioner's habeas petition cited to Duvall and Swain,

13   which could stand for an exhaustion problem.  (Resp't's Lod. Doc. 3.)  In this court's findings

14   and recommendations addressing the motion to dismiss, this court noted that the claims were

15   unexhausted in a footnote:

16   Even if the petition was timely filed, the claims are still
    unexhausted.  In Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir.
17   1986) the Ninth Circuit considered a state petition denied with a
    citation to In re Swain, 34 Cal.2d 300 (1949).  A citation to Swain,
18   like Duvall, stands for the proposition that a petitioner has failed to
    state his claim with sufficient particularity.  In Kim v. Villalobos,
19   the Ninth Circuit found that the Swain citation indicated that the
    claims were unexhausted because their pleadings defects, i.e. lack
20   of particularity, could be cured in a renewed petition.  799 F.3d at
    1319.
21
    However, in Kim v. Villalobos, the Ninth Circuit also stated
22   that it was "incumbent" of the court, in determining whether the
    federal standard of "fair presentation" of a claim to the state courts
23   had been met, to independently examine Kim's petition to the
    California Supreme Court.  Id. at 1320.  "The mere citation of In re
24   Swain does not preclude such review."  Id.  Pursuant to Kim v.
    Villalobos the court will review petitioner's habeas petition filed in
25   the California Supreme Court to determine whether his claims were
    fairly presented.  A review of petitioner's claims indicates they
26   were not fairly presented to the California Supreme Court as
    plaintiff had not included reasonably available documentary
27   evidence to support the claims.

28   (Findings and Recommendations, filed August 11, 2011 at n. 6.)

4

In its answer, respondent now makes the following statement concerning exhaustion:

> 3. Petitioner must prove exhaustion. A claim purportedly presented on direct appeal is exhausted solely as it was articulated to the California Court of Appeal, and in light of the evidence presented to that court; but subject to the further condition that precise claim was thereafter timely made to the California Supreme Court in a Petition for Review. A claim purportedly presented on state habeas is exhausted only as explicitly articulated in the pleadings before the California Supreme Court, and limited to the appellate record and further competent evidence presented to that court. Otherwise, the claims in the Petition are barred as unexhausted, 28 U.S.C. § 2254(b)(1), and on the merits may only be denied, 28 U.S.C. § 2254(b)(2).

(Answer at 1-2.)

This isolated, equivocal boilerplate statement is the only mention of exhaustion in the answer, which contains points and authorities limited to addressing the merits of the claims only. This statement appears to state that the claims are exhausted, unless they are not exhausted. Therefore, the statement does not preserve any claim that petitioner failed to exhaust, but rather waives any claim of lack of exhaustion.[1]  Moreover, the court has reexamined the exhaustion/merits question and finds on its own that the ruling by the California Supreme Court was a ruling on the merits.  See infra.  In any event, the court may deny an unexhausted claim on the merits without regard to a petitioner's failure to exhaust.  28 U.S.C. § 2254(b)(2).

C.  AEDPA Standard of Review

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

/////

---

[1] This boilerplate statement concerning exhaustion is not the first time the undersigned has encountered this equivocal exhaustion objection.  It is rather apparent that the statement is inserted in many cases as a "just in case fallback" if the decision on the merits does not turn out the way respondent anticipated.  However, the undersigned believes that if the exhaustion position is worth asserting, it is worth briefing; conversely, if it is not worth briefing, it is not worth asserting.  Moreover, the boilerplate statement leaves the district court in a quandary as to whether it should launch off on its own explanation, or ignore the unexplained statement, or take yet more time to plead with respondent to brief the issue.  The undersigned finds that exhaustion has been waived.

5

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

Accordingly, "a habeas court must determine what arguments or theories supported or … could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was

6

1    unreasonable requires considering the rule's specificity.  The more general the rule, the more

2    leeway courts have in reaching outcomes in case-by-case determinations.'"  Id.  Emphasizing the

3    stringency of this standard, which "stops short of imposing a complete bar of federal court

4    relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

5    cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

6    was unreasonable."  Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

7            The undersigned also finds that the same deference is paid to the factual determinations of

8    state courts.  Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

9    subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

10   decision that was based on an unreasonable determination of the facts in light of the evidence

11   presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in §

12   2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

13   factual error must be so apparent that "fairminded jurists" examining the same record could not

14   abide by the state court factual determination.  A petitioner must show clearly and convincingly

15   that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.

16   969, 974 (2006).

17           The habeas corpus petitioner bears the burden of demonstrating the objectively

18   unreasonable nature of the state court decision in light of controlling Supreme Court authority.

19   Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).  Specifically, the petitioner "must

20   show that the state court's ruling on the claim being presented in federal court was so lacking in

21   justification that there was an error well understood and comprehended in existing law beyond

22   any possibility for fairminded disagreement."  Harrington, supra, 131 S. Ct. at 786-787.  "Clearly

23   established" law is law that has been "squarely addressed" by the United States Supreme Court.

24   Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008).  Thus, extrapolations of

25   settled law to unique situations will not qualify as clearly established.  See e.g., Carey v.

26   Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state

27   sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

28   prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

1  established law when spectators' conduct is the alleged cause of bias injection).  The established

2  Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

3  controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

4  federal courts.  Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

5      The state courts need not have cited to federal authority, or even have indicated awareness

6  of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8, 123 S. Ct. at 365.

7  Where the state courts have not addressed the constitutional issue in dispute in any reasoned

8  opinion, the federal court will independently review the record in adjudication of that issue.

9  "Independent review of the record is not de novo review of the constitutional issue, but rather, the

10  only method by which we can determine whether a silent state court decision is objectively

11  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

12      If the state courts have not adjudicated the merits of the federal issue, no

13  AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

14  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012).  However, when a state court decision on a

15  petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

16  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

17  merits.  Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

18      D.  Were the State Petitions Decided on the Merits

19      It is important to determine whether the state courts decided the issues herein on the

20  merits, for if they did not, the AEDPA constrictions briefed above do not apply.  Wood v. Ryan,

21  693 F.3d 1104, 1114  (9th Cir. 2012).

22      Petitioner presented claims 1 and 2 in his state habeas petition filed in the Butte County

23  Superior Court.  (Lod. Doc. 2.)  The Superior Court, citing In re Swain (1949) 34 Cal.2d 300,

24  303-04, and People v. Duvall (1995) 9 Cal. 4th 464, 474, denied the claim on alternative

25  grounds, i.e., that the allegations were insufficient to allow for intelligent consideration of the

26  issues, and that petitioner failed to state with particularity the facts upon which relief should be

27  /////

28  /////

1    granted and/or failed to include copies of reasonably available documentary evidence to support

2    the claim.[2]  (Res't's Lod Doc. 2.)  Petitioner presented all three claims to the California Court of

3    Appeal and the California Supreme Court.  (Res't's Lod. Docs. 4, 6.)  The California Court of

4    Appeal denied the claims without comment or citation.  The California Supreme Court denied the

5    claims with citations to People v. Duvall (1995) 9 Cal. 4th 464, 474 and In re Swain (1949) 34

6    Cal.2d 300, 304.  (Res't's Lod. Doc. 7.)

7         Under the "look through" doctrine, the Court considers the last court to have given a

8    reason for the denial of a claim.  See Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590

9    (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural

10   default, we will presume that a later decision rejecting the claim did not silently disregard that bar

11   and consider the merits.")  Because the Court of Appeal issued a "silent" denial, the Court of

12   Appeal is presumed to have determined its decision on the Swain/Duvall basis.  However, the

13   state supreme court's denial was not "silent'" as it provided case citations for its determination,

14   the same citations provided by the Superior Court.  Therefore, it is the highest state court decision

15   which governs here to the extent that it differs at all from that of the Superior Court.

16        Swain itself held that it was *not* reaching the merits of the claim because of the deficiency

17   of pleading, id. at 304, and remanded for the filing of a new petition.  Duvall, although containing

18   a lengthy discussion of state habeas pleading practice, ultimately found that *respondent's* return,

19   and not the petition was the problem.  However, in referencing the requirements of the petition,

20   Duvall focused on the need for factual support as opposed to conclusory allegations.  Duvall does

21   not stand for the proposition that the claim itself was indecipherable such that a new petition

22   should be filed.

23        In the case cited by the Ninth Circuit remanding the initial untimeliness claim in this case,

24   a citation to Swain and Duvall was held to be the incomplete, incoherent or baseless statement of

25   the claim to the state courts.  See Cross v. Sisto, 676 F.3d 1176-1177.  That citation and

26

27   _____

     [2] The form is less than helpful as one ground indicates an exhaustion problem, one ground is
28   equivocal as to whether the merits were reached, and one ground indicates that the petition failed
     on its merits for lack of factual support.

1   interpretation by the Ninth Circuit in this case is law of the case.  This procedural defect *either*

2   implicates exhaustion, <u>Kim v. Villalobos</u>, 799 F.2d 1317, 1319 (9th Cir. 1986), *or* could be a

3   summary ruling on the merits if the problem is viewed to be one of particularity of allegations [or

4   lack of factual support]. <u>Id</u>.[3]   <u>Kim</u> held, in essence, that if the state supreme court was "wrong"

5   on the particularity assessment of the petition's allegations from a federal perspective, the state

6   court determination was indeed a ruling on the merits reviewable in federal court in that the

7   claims could not be stated with more particularity.

8        After review of the state habeas proceedings, and in light of the state courts' citations,

9   especially <u>Duvall</u>, the undersigned finds that petitioner's problem was not so much one of

10  incoherence as it was a problem of a lack of factual support.  In addition, the state court petitions

11  were not dismissed without prejudice to the re-filing of a new one; rather, the petitions were

12  simply denied.  This is a merits determination.  Also, petitioner had filed in the state supreme

13  court, but not the Superior Court, essentially the same medical records that he has filed herein.

14  The Supreme Court was likely ruling on the merits and finding the factual submissions

15  insubstantial.  In addition, the undersigned has found that respondent has waived any exhaustion

16  argument.  Pursuant to <u>Kim</u>, therefore, the petition in this case will be decided on the merits as

17  well.

18        When <u>Kim</u> was decided, a determination that the federal court could reach the merits of a

19  petition had only a procedural upside for a petitioner.  The federal claims were reviewed *de novo*,

20  and an evidentiary hearing to add facts could be held on fact based claims, almost for the asking,

21  depending on the completeness of the state record.  However, since the advent of AEDPA, and

22  the Supreme Court's decision in <u>Cullen v. Pinholster</u>, __U.S.__, 131 S. Ct. 1388(2011), a <u>Kim</u>

23  finding that the merits should be reached because they were reached for all intents and purposes

24  by the state courts generally foretells the doom of a federal petition.  This is especially true if the

25  state court citations were meant to find a lack of factual support for a legal claim.  As seen below,

26

27  [3] Upon exhaustive review of the particular cases, the undersigned modifies his statement about
    <u>Kim</u>, contained in footnote 6 of the previous Findings and Recommendations recommending
28  dismissal on the basis of the statute of limitations.

1  for fact based claims, the lack of adequate factual support in the state petition(s) will most

2  probably lead to a rejection of the claim under § 2254(d), and petitioner will be unable to

3  introduce new evidence in federal court.

4        E. <u>Petitioner's Claims</u>

5            1. <u>Whether Petitioner's Confession Was Inadmissible as Coerced</u>

6        Petitioner first asserts that his confession was inadmissible because it was coerced by the

7  police.  (Pet. at 5.)   In support, he claims that he suffered severe brain damage as a result of a car

8  accident in 2006, that he was bombarded with questions at the time of the arrest to the point

9  where he broke down from exhaustion, fear and intimidation, and that he had no idea what he was

10  stating because he was on psychotropic medication and pain killers.  (<u>id.</u>)

11        Any police coercion which may have occurred took place prior to the entry of petitioner's

12  guilty plea to the charges against him.  The law is clear that petitioner may not raise claims of

13  deprivation of his constitutional rights that occurred prior to his plea. "When a criminal defendant

14  has solemnly admitted in open court that he is in fact guilty of the offense with which he is

15  charged, he may not thereafter raise independent claims relating to the deprivation of

16  constitutional rights that occurred prior to the entry of the guilty plea." <u>Tollett v. Henderson</u>, 411

17  U.S. 258, 267 (1973).  <u>See also</u> <u>McMann v. Richardson</u>, 397 U.S. 759, 770-71 (1970); <u>Moran v.</u>

18  <u>Godinez</u>, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule, one who voluntarily pleads guilty

19  to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea

20  constitutional violations"), <u>overruled on other grounds</u> by <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-

21  76 (2003); <u>Ortberg v. Moody</u>, 961 F.2d 135, 137 (9th Cir. 1992) ("petitioner's nolo contendere

22  plea precludes him from challenging alleged constitutional violations that occurred prior to the

23  entry of that plea"); <u>Hudson v. Moran</u>, 760 F.2d 1027, 1029-30 (9th Cir. 1985) (voluntary and

24  intelligent guilty plea precludes federal habeas relief based upon "independent claims" of pre-plea

25  constitutional violations); <u>United States v. DeVaughn</u>, 694 F.3d 1141, 1153 (10th Cir. 2012) ("A

26  guilty plea waives all defenses except those that go to the court's subject-matter jurisdiction and

27  the narrow class of constitutional claims involving the right not to be haled into court.").

28  /////

1    Petitioner may not now raise claims of constitutional violations, such as a coerced

2  confession, which may have occurred prior to the entry of his guilty plea.  See Marrow v. United

3  States, 772 F.2d 525, 527 (9th Cir. 1985) (finding that guilty plea precluded consideration of

4  claim concerning legality of confession).  The denial in state court of this claim was not

5  unreasonable.  Even utilizing the standards of *de novo* review under pre-AEDPA law, petitioner's

6  claim is without merit.  Therefore, this claim should be denied.

7                    2.  Whether Petitioner Understood the Consequences of his Plea

8    In Ground Two of the petition, petitioner asserts that because he could not understand the

9  consequences of his plea, it was invalid.  Although the court conducted a mental competence

10  hearing to determine if petitioner could stand trial, petitioner claims that it should have conducted

11  a hearing to determine if he could understand the nature and consequences of his plea or to

12  understand his constitutional rights before he made his plea.  Because of his brain damage,

13  petitioner claims he "had no idea what he was pleading to."

14                    a.  Background

15    On May 7, 2008, petitioner was ordered to undergo a mental exam on the issue of

16  competence, and the proceedings were suspended for this purpose.  (CT at 14.)  Based on the

17  examining psychologist's confidential report, the court found petitioner competent and

18  proceedings were reinstated on June 4, 2008.  (Id. at 19-21; RT at 1.)  On June 18, 2008,

19  petitioner completed and signed a negotiated plea agreement, including a waiver of rights form,

20  and appeared at his plea hearing.  (CT at 24-28; RT at 3-11.)  When the prosecutor informed the

21  court that the D.A. was amending Count 1 to add a victim, the court informed the defendant of the

22  increased term for which he was now eligible, and asked whether petitioner understood that.

23  Petitioner responded, "yes, sir."  (RT at 5.)  The following colloquy then occurred:

24              THE COURT:  All right.  Mr. Jones, I have a plea form here.
              You're in custody.  Have you had enough time to talk to Mr.
25              Stapleton (petitioner's counsel) about this?

26              THE DEFENDANT:  Yes, sir.

27              THE COURT:  Well –

28              MR. STAPLETON:  You need to pay close attention to what he

12

1    says.

2    THE COURT:  If you have a question for me, you ask me the question.  I don't want you to look at your attorney for yes's and

3    no's.  If you don't know the answer, tell me you don't know the answer, okay?

4

     THE DEFENDANT:  Yes, sir.

5

     THE COURT:  We want to be real upfront about this.  I need to

6    make sure you know what you're doing.  Do you understand?

7    THE DEFENDANT:  Yes, sir.

8    THE COURT:  Did you have enough time to talk to Mr. Stapleton about your plea today?

9

     THE DEFENDANT:  Yes, your Honor.

10

     THE COURT:  Were you completely honest with him about what

11   happened that day?

12   THE DEFENDANT:  Yes, sir.

13   THE COURT:  Did he discuss the possible defenses that you might have to a case like this?

14

     THE DEFENDANT:  Yes, sir.

15

     THE COURT:  All right.  And did you decide ultimately to enter

16   into this plea?

17   THE DEFENDANT:  Yes, sir.

18   THE COURT:  And were you able to read and understand the plea form?

19

     THE DEFENDANT:  Yes, sir.

20

     THE COURT:  And as you read the plea form and as you sit here

21   today are you under the influence of any alcohol or controlled substances of any sort at all?

22

     THE DEFENDANT:  No, sir.

23

     THE COURT:  Are you thinking pretty clearly today?

24

     THE DEFENDANT:  Yes, sir.

25

     THE COURT:  Do you read and write the English language?

26

     THE DEFENDANT:  Yes, sir.

27

     THE COURT:  How much education have you had?

28

THE DEFENDANT:  12th grade.

(<u>Id.</u> at 5 - 7.)  The court then inquired into the plea form initialed and signed by petitioner, to ensure that he read and understood each line, and that the effect of initialing and signing the form meant that he understood the constitutional rights he was giving up, which the court enumerated for him.  Petitioner responded that he understood all of the above.  (<u>Id.</u> at 7-8.)   The court continued the questioning:

> THE COURT:   Did anyone promise you or threaten you with anything to get you to enter into this plea?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  Other than the dismissal of the counts you're not pleading to?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:   You understand the Court will take into consideration the facts of the cases that are being dismissed in determining your sentence?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And Mr. Stapleton explained to you the elements the People would have to prove to convict you of these charges?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  And the possible consequences of your plea?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:   You understand the Court's hands would be tied and we'd be sentencing you to a 15 to life sentence on this case?
>
> THE DEFENDANT:  Yes, sir.

(<u>Id.</u> at 8.)

The court then asked petitioner how he pled to the charges, if he admitted to the facts of the crimes as read to him by the court, if these facts were accurate, and petitioner responded that he pled no contest, that all the facts read were accurate,[4] and he admitted to them.  (<u>Id.</u> at 9.)

/////

/////

---

[4]   The court deferred a finding of a factual basis until sentencing.  (<u>Id.</u> at 10.)

14

1                      b. Applicable Legal Standards

2         It is clearly established federal law that a guilty plea must be knowing, intelligent and

3 voluntary. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238,

4 242 (1969). The record must reflect that a criminal defendant pleading guilty understands, and is

5 voluntarily waiving, his rights to the privilege against compulsory self-incrimination, to trial by

6 jury and to confront one's accusers. Boykin, 395 U.S. at 243. However, "beyond these essentials,

7 the Constitution 'does not impose strict requirements on the mechanics of plea proceedings.'"

8 Loftis v. Almager, 704 F.3d 645, 648 (9th Cir. 2012) (quoting United States v. Escamilla-Rojas,

9 640 F.3d 1055, 1062 (9th Cir. 2011). See also Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir.

10 1974) (specific articulation of the Boykin rights "is not the *sine qua non* of a valid guilty plea.").

11 Rather, if the record demonstrates that a guilty plea is knowing and voluntary, "no particular

12 ritual or showing on the record is required." United States v. McWilliams, 730 F.2d 1218, 1223

13 (9th Cir. 1984). The long-standing test for determining the validity of a guilty plea is "'whether

14 the plea represents a voluntary and intelligent choice among the alternative courses of action open

15 to the defendant.'" Parke v. Raley, 506 U.S. 20, 29 (quoting North Carolina v. Alford, 400 U.S.

16 25, 31 (1970)). "The voluntariness of [a petitioner's] guilty plea can be determined only by

17 considering all of the relevant circumstances surrounding it." Brady, 397 F.2d at 749. A prisoner

18 who has pled guilty may attack only the voluntary and intelligent character of his guilty plea in

19 habeas proceedings. Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992).

20         In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the

21 presumption of verity to be given the record of plea proceeding when the plea is subsequently

22 subject to a collateral challenge. While noting that the defendant's representations at the time of

23 his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his

24 plea, the court stated that, nonetheless, the defendant's representations, as well as any findings

25 made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral

26 proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity."

27 Blackledge, 431 U.S. at 74. A guilty plea is presumed valid in habeas proceeding when the

28 pleading defendant was represented by counsel. Marshall v. Lonberger, 459 U.S. 422, 437

1    (1983).

2                               c.  Analysis

3          The state court record in this case includes petitioner's signed guilty plea and waiver of

4    rights form, wherein he acknowledged in writing that his attorney had explained possible

5    consequences of his plea.  (Res't's Lod. Doc. 8 at 26.)  He also waived his rights to a preliminary

6    hearing, speedy trial and to a trial by jury, the right to confront all witnesses against him, the right

7    to offer evidence on his behalf at a trial, his right against self-incrimination, and to a direct appeal

8    except as to sentencing errors.  (Id. at 25.)  The form advised petitioner of his maximum possible

9    sentence.  (Id. at 26.)  Petitioner acknowledged that he was sober, that he had not consumed any

10   drugs, alcohol, or narcotics in the past 24 hours, and that he was not taking any prescription

11   medication that would impair his judgment.  (Id. at 24.)  Petitioner also had notice of the nature of

12   the charges against him.  (Id.)  See Lonberger, 459 U.S. at 436 (in order for a plea to be

13   voluntary, an accused must receive notice of the nature of the charge against him, "the first and

14   most universally recognized requirement of due process") (quoting Smith v. O'Grady, 312 U.S.

15   329, 334 (1941)).

16         Petitioner also affirmed in the waiver of rights form that he was entering this plea

17   voluntarily, that he stipulated to the factual basis for the plea, that he understood all the charges

18   and any prior convictions or enhancements.  He also confirmed his knowledge that he had a right

19   to an attorney and to certain constitutional rights which he was waiving.  (Id. at 24-25.)

20   Petitioner's trial counsel stated that he had read and explained the waiver of rights form to

21   petitioner, answered all of petitioner's questions about the plea, discussed the meaning of all of

22   the items, as well as the facts of the case, explained the consequences of the plea, the elements of

23   the offense and possible defenses.  (Id. at 28.)  In open court, as set forth above, petitioner

24   informed the trial judge that he had signed and initialed the plea form, that he had discussed its

25   contents with his attorney, and that he had no questions about the document.  This is sufficient for

26   purposes of federal habeas review.  Lonberger, 459 U.S. at 436.

27         In the petition before this court, petitioner argues that he could not understand the

28   consequences of the plea due to brain damage, and therefore it is invalid.  He claims that the

                                        16

1   competence hearing was conducted to determine if petitioner was able to stand trial, not to

2   understand the plea.  He further claims that his attorney did not apprise him of his plea, other than

3   to tell him to answer "yes" to everything the judge asks him.  (ECF No. 1 at 5.)  Aside from

4   appropriately not answering "yes" to every question (thereby indicating that he understood what

5   the judge was asking), petitioner's contentions are legally unavailing (see below) or directly

6   contradicted by the record.

7       Thus, under AEDPA, it cannot be said that the state courts acted unreasonably in denying

8   the "competence to plead guilty" claim based on the record before those courts.  Reasonable

9   jurists could find that petitioner's latter day pronouncements are at odds with the record in this

10  case.  It is not unreasonable to rely upon a record which does not demonstrate incompetence.

11      Even if this court were permitted to review *de novo* the evidence presented here in federal

12  court, evidence similar to that presented in the state supreme court, petitioner's claim would fail.

13  Petitioner, although providing medical records indicating bipolar disorder and that he suffered a

14  head injury as a result of a car accident,[5] (ECF No. 44, Exs.), has not provided evidence that he

15  had brain damage at the time of his guilty plea sufficient to compromise his competence to plead

16  guilty.  It is true that petitioner has submitted a T.A.B.E. complete battery test, conducted on

17  October 22, 2008 at High Desert State Prison, which indicates that petitioner had a 6.4 grade

18  reading level.  (Id. at 6.)  Nevertheless, petitioner stated at the plea hearing that he had read and

19  understood the forms, and had discussed them with his attorney.[6]  This form would not be beyond

20  the comprehension of a sixth grade reading level in any event.  Petitioner received a competence

21  exam a few weeks prior to the entry of his guilty plea and was found competent by a psychologist

22  and the court.[7]  (Res't's Lod. Doc. 8 at 21.)  The standard for determining competence to stand

23

24  _____

    [5]   Although the hospital discharge summary after the 2006 car accident noted that petitioner's
25  wife reported that he had cognitive deficits with memory and judgment, as well as some
    personality changes, this report was issued in 2006, two years prior to the guilty plea.  (ECF No.
26  44 at 48.)
    [6]   Petitioner's own filings with the court indicate that he is able to read and communicate basic
27  information, at about the same level of complexity as the plea agreement, which was also fully
    explained to petitioner at his plea hearing.  See ECF Nos. 44, 45.
28  [7]   The report itself has not been made part of the record.  (Res't's Lod. Doc. 8 at 19.)

1    trial is the same standard as that used to determine competence to plead guilty. <u>Godinez v.</u>

2    <u>Moran</u>, 509 U.S. 389, 113 S. Ct. 2680 (1993).  The Supreme Court noted that in both pleading

3    and in standing trial, a defendant will have to consider whether to give up the same constitutional

4    rights: the privilege against self-incrimination, the right to a jury trial, and the right to confront

5    accusers.  <u>Id.</u> at 398-99.  Both courses of action require sometimes different, but equally

6    complicated and important decisions.  Therefore, the court reasoned, there was no basis for

7    demanding a higher level of competence for those defendants who plead guilty.  <u>Id.</u>  <u>See also</u>

8    <u>Bills v. Clark</u>, 628 F.3d 1092, 1099 (9th Cir. 2010).  The distinction between going to trial and

9    pleading guilty may be in the heightened standard required of a guilty plea, that of a knowing and

10   voluntary waiver of rights which is not required for trial, but according to <u>Godinez</u>, "it is not a

11   heightened standard of competence."  509 U.S. at 400-401.

12        The burden on a claim of incompetence in habeas is a heavy one:

13           Courts in habeas corpus proceedings should not consider claims of
             mental incompetence to stand trial [or enter a guilty plea] where the
14           facts are not sufficient to positively, unequivocally, and clearly
             generate a real, substantial, and legitimate doubt as to the mental
15           capacity of the petitioner.

16           <u>Bruce v. Estelle</u>, 483 F.2d 1031, 1043 (5th Cir.1973). A lifelong
             history of mental illness and emotional problems does not
17           demonstrate incompetency without a specific showing of how these
             difficulties generated a substantial doubt as to the petitioner's
18           competency at the time in question. <u>Medina v. Singletary</u>, 59 F.3d
             1095, 1106 (11th Cir.1995). Similarly, the fact the accused is
19           undergoing treatment with psychiatric drugs, while relevant, does
             not alone prove incompetence.   <u>Sheley v. Singletary</u>, 955 F.2d
20           1434, 1438-39 (11th Cir.1992). In order to establish incompetence,
             evidence must establish that the drugs affected the accused to the
21           point that he could not effectively consult with his attorney and
             could not understand the proceedings. <u>Id.</u> at 1439. Furthermore, "[a]
22           bare allegation of the level of psychotropic drugs administered to
             petitioner before entering his plea ... is insufficient to meet this
23           evidentiary threshold." <u>Id.</u>

24   <u>Davis v. McNeil</u>, 2008 WL 2540306, *30 (N. D. Fla. Aug. 12, 2008).

25        In this case, petitioner has failed to present facts sufficient to create a legitimate doubt as

26   to his mental capacity.  In addition to his competence exam, he signed a form stating that he had

27   not ingested any substances that would impair his judgment, and that he was sober.  (Res't's Lod.

28   Doc. 8 at 24.)  He also initialed all parts of the form wherein he was asked whether he understood

specific consequences of pleading guilty.  At his plea hearing, petitioner was carefully and fully questioned by the judge who elicited admissions from petitioner that he read and understood the plea form, including all the lines next to the boxes he had initialed, that he was not under the influence of any alcohol or controlled substances and that he was thinking clearly. (Res't's Lod. Doc. 9 at 6-7.)  Petitioner responded clearly to the judge's questioning at the plea hearing.  At the hearing, petitioner stated that he had a 12th grade education and could read and write.  (Id. at 7.) All of these facts belie petitioner's contention of brain damage such that any problem prevented him from making a knowing and intelligent plea.

As to the last contention, petitioner specifically signed the plea form wherein he agreed that he was entering his plea voluntarily, without threat or fear, and further stated at the plea hearing that he was not threatened or promised anything in exchange for his plea, that his attorney had explained all the consequences of the plea, and that petitioner understood them.  (Res't's Lod. Doc. 8 at 24-26; 9 at 8.)

Petitioner's statement of brain damage at a prior time in his life, the permanent degree of which was, and is, unknown, is not sufficient to meet his burden of establishing that his guilty plea was not voluntary and knowing.  See Parke v. Raley, 506 U.S. 20, 31-34 (1992) (petitioner carries burden to show his guilty plea was not knowing and voluntary); Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006).  Although the record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary, Boykin, 395 U.S. at 242-43, the record in this case makes that showing.[8]

Moreover, petitioner simply cannot dismiss the results of the competency hearing as if they did not exist.  He has made no claim here that his competency proceedings were marred by constitutional defect.  Rather he makes the incorrect legal statement that his competence to stand trial is completely different from his competence to plead guilty.  The records he has submitted in federal court do nothing to cast doubt on the concededly proper competence investigation performed and result given in state court.

_____

[8] Whether petitioner would be entitled to an evidentiary hearing is discussed below.

19

1    In sum, there is nothing in the record before this court to overcome the presumption that

2    petitioner pled guilty voluntarily and intelligently.  Accordingly, he is not entitled to relief on this

3    claim even if the undersigned were permitted to review the federal court evidence submitted by

4    petitioner.

5                    3.  Ineffective Assistance of Counsel

6    Petitioner claims that his trial counsel rendered ineffective assistance in demanding that he

7    plead guilty when he had a viable defense.  (Pet. at 6.)  "The defense was that my wife [ex-wife]

8    and her daughters entirely fabricated this whole mess because I would not b[u]y a car for one of

9    the daughters.  On numerous times when the girls would ask me for money, I would say 'no,'

10   then, the girls would state: 'we are a package deal!'"  (Id.)

11   Assuming arguendo that petitioner is attacking the voluntary and intelligent character of

12   his guilty plea by alleging that the advice he received from his counsel to plead guilty was

13   improper or inadequate in some way, his claim should be rejected.  Tollett, 411 U.S. at 267 (a

14   defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and

15   intelligent character of the guilty plea by showing that the advice he received from counsel was

16   not within the standards set forth in McMann" [v. Richardson, 397 U.S. 759 (1970)] (holding that

17   all defendants facing felony charges are entitled to the effective assistance of competent counsel);

18   Mitchell v. Superior Court for City of Santa Clara, 632 F.2d 767, 769-70 (9th Cir. 1980) ("a

19   guilty plea will not preclude federal habeas relief if it was not voluntarily and intelligently made

20   with competent advice of counsel").  To prevail on such a claim, a petitioner must show that: (1)

21   counsel's representation fell below the range of competence demanded of attorneys in criminal

22   cases, and (2) "there is a reasonable probability that, but for counsel's errors, he would not have

23   pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 56

24   (1985).  Petitioner has failed to make any showing suggesting that his counsel's advice to plead

25   guilty constituted deficient performance.

26   The case against petitioner was substantial.  Both stepdaughters, aged 12 and 15 at the

27   time of the report, but between four and seven at the time of the incidents, described petitioner's

28   forcible oral copulation of them in detail.  (CT at 36-40.)  Petitioner's ex-wife reported that

20

1    during an argument, petitioner initially denied molesting her daughters, but then stated, "Okay, I

2    did it. Tell the girls I'm sorry." (Id. at 37.) Even without petitioner's inculpatory statements to

3    police, this evidence against petitioner was significant and substantial. Petitioner himself

4    confessed to the crimes when he was brought to the District Attorney's Office for an interview on

5    April 8, 2008. (Id. at 39.) After this interview, petitioner wrote an apology letter to the victims.

6    (Id.) Petitioner additionally and consistently confessed at the Butte County Jail on July 9, 2008.

7    (Id. at 40-41.) In addition to his form guilty plea which states, "I am pleading guilty because in

8    truth and in fact I am guilty," (CT at 25) (emphasis in original), petitioner admitted to the crimes

9    in court after a very thorough colloquy with the judge. (RT at 9.) Furthermore, petitioner was

10   facing a possible sentence of thirty years to life in prison by virtue of the charges against him.

11   (See id. at 2.) As a result of his plea agreement, four counts were dismissed with a Harvey

12   waiver.[9] (CT at 2-6, 24.) Petitioner ultimately received a sentence of fifteen years to life in

13   prison. (Id. at 72.) Under these circumstances, counsel's advice to petitioner that he should

14   accept the plea offer was certainly not below an objective standard of reasonableness.

15         Based on the state court record in this case, AEDPA requires the undersigned to uphold

16   the state court determinations as they were not AEDPA unreasonable.

17         E. Evidentiary Hearing

18         Petitioner has not requested an evidentiary hearing; however, even if he had requested

19   one, it would be denied.

20         First, the holding in Cullen v.Pinholster, supra precludes it. That case is based on the

21   premise that the federal courts must decide the § 2254(d) issues on the record before the state

22   court. Pizzuto v.Blades, 729 F.3d 1211, 1216 (9th Cir. 2013). Only if that record would require a

23   determination that the adjudication of the claim itself was AEDPA unreasonable, or if the state

24   courts were unreasonable in not holding their own evidentiary hearing, can an evidentiary hearing

25   _____

26   [9] In People v. Harvey, 25 Cal.3d 754, 758 (1979), the California Supreme Court concluded that a
     sentencing court could not properly consider any of the facts underlying a dismissed count for

27   purposes of aggravating a defendant's sentence on remaining counts because of an implicit
     understanding that the defendant would suffer no adverse sentencing consequences by reason of

28   the facts underlying a count which was dismissed pursuant to a plea bargain.

1    be held in federal court.  Id. at 1216, 1219.  The evidentiary hearing preclusion also addresses, of

2    course, this court's *de novo* interpretation of extra- record evidence produced by a petitioner.

3        As discussed previously, the state courts were reasonable in their assessment of

4    petitioner's claims based on the record before them.  Nor, in light of the record, which is in patent

5    contrast to petitioner's conclusions, did the state courts act unreasonably in not granting petitioner

6    an evidentiary hearing on his contrasting conclusions.  "The state court does not act unreasonably

7    'so long as the state court could have reasonably concluded that the evidence already adduced

8    was sufficient to resolve the factual question.' [citation omitted].  Pizzuto, at 1219.

9        Given the unopposed competency hearing result proximate to the plea of guilty, and the

10   record which unequivocally attests to petitioner's competence to enter the plea, the state courts

11   were not unreasonable in failing to have a second or retrospective competency hearing.

12       The undersigned again, however, discusses the issue here, in an abundance of caution, of

13   whether an evidentiary hearing would have been required under the much more lenient pre-

14   AEDPA/Cullen standards.  A district court presented with a request for an evidentiary hearing

15   must first determine whether a factual basis exists in the record to support a petitioner's claims

16   and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme, 187 F.3d

17   1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005);

18   Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  A petitioner requesting an

19   evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

20   Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d

21   706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)).  To show

22   that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

23   entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

24   marks and citation omitted).

25       "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas

26   relief, a district court is not required to hold an evidentiary hearing."  Schiro v. Landrigan, 550

27   U.S. 465, 474 127 S. Ct. 1933, 1940 (2077).   Where the allegations to be proven at an

28   evidentiary hearing are extremely unlikely, an evidentiary hearing is unnecessary.  An evidentiary

22

1    hearing may be denied where the proffered evidence is flimsy. Perez v. Rosario, 449 F.3d 954,

2    961 (9th Cir. 2006) (pre-Pinholster AEDPA case). Under the standards applicable to the claims

3    brought herein, no evidentiary hearing is warranted here, where petitioner has failed to make out

4    any colorable constitutional claims in light of the record. Babbitt v. Calderon, 151 F.3d 1170,

5    1177-78 (9th Cir. 1998).

6            There is nothing in the record to indicate that petitioner ever challenged his competency

7    hearing or its result before or at the time of plea. Yet, petitioner now attempts to argue that he

8    was not competent at the plea hearing, conducted only a few weeks after his competency hearing.

9    In effect, petitioner impliedly seeks a retrospective competency hearing based on the date he

10   entered his guilty plea. As summarized above, the judge at the plea hearing went into great detail

11   to ensure that petitioner understood the consequences of his plea and to create a thorough record

12   of the event. For example, at the beginning of the colloquy, the judge specifically instructed

13   petitioner to ask the judge if he had any questions, not to look to his attorney for the answers.

14   Petitioner responded that he understood these instructions. (RT at 5.) The highlights of the

15   thorough questioning by the judge include petitioner's concession that his attorney discussed the

16   consequences of his plea with petitioner and that petitioner understood them, petitioner's

17   admission that he was not under the influence of any substances and that he was thinking clearly,

18   and petitioner's affirmation that he received no promises or threats in connection with his plea.

19   Throughout the proceedings petitioner responded readily, consistently, and clearly without

20   hesitation, to the questions asked of him.[10] The record, as summarized above, is sufficiently

21   patent to refute any need for an evidentiary hearing. Petitioner has not shown that the facts

22   underlying any of his assertions concerning the circumstances of his plea are anything but post-

23   hoc speculation on his part totally at odds with the record. Thus, an evidentiary hearing, even

24   under the "old rules" is not warranted.

25   /////

26   /////

27   _____

28   [10]  At petitioner's sentencing, he was granted the opportunity to speak; however, he stated that he had nothing to say. (RT at 16.)

1   III.  <u>CONCLUSION</u>

2        For all of the foregoing reasons, the petition should be denied and no evidentiary hearing

3   ordered.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

4   issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A

5   certificate of appealability may issue only "if the applicant has made a substantial showing of the

6   denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these

7   findings and recommendations, a substantial showing of the denial of a constitutional right has

8   not been made in this case.

9        Accordingly, IT IS HEREBY ORDERED THAT no evidentiary hearing will be held;

10  IT IS HEREBY RECOMMENDED that:

11       1.  Petitioner's application for a writ of habeas corpus be denied; and

12       2.  The District Court decline to issue a certificate of appealability.

13       These findings and recommendations are submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15  after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  shall be served and filed within fourteen days after service of the objections.  Failure to file

19  objections within the specified time may waive the right to appeal the District Court's order.

20  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  Dated: November 20, 2013

22                                        /s/ Gregory G. Hollows

23                                  UNITED STATES MAGISTRATE JUDGE

24  GGH:076/Jone1006.hc

25

26

27

28

                                           24